JL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gary John Emerson, | No. CV 15-00093-PHX-ROS (ESW) |
| Plaintiff, | |
| v. | **ORDER** |
| Corizon Health Services, et al., | |
| Defendants. | |

Plaintiff Gary John Emerson, who is currently confined in the Arizona State Prison Complex-Florence, brought this civil rights action pursuant to 42 U.S.C. § 1983. Defendants Corizon Health Services ("Corizon")[1], Greg Fizer, Joanne Grafton, Bertram Hurowitz, Chris Johnson, Michael Lesac, Jeffrey Lavoy, former Director of the Arizona Department of Corrections (ADC) Charles L. Ryan[2], and Annemarie Smith-Whitson move for summary judgment.[3] (Doc. 146.) Plaintiff filed an Objection to Defendants' Motion for Summary Judgment (Doc. 167), which Defendants move to strike (Doc. 170). Also before the Court are Plaintiff's Motion for Extension of Time to Serve Shuman and Robertson (Doc. 142) and Magistrate Judge Willett's February 15, 2019 Report and

---

[1] From March 4, 2013 through July 1, 2019, Corizon was the contracted healthcare provider for Arizona Department of Corrections prisoners. The current contracted healthcare provider is Centurion Health, LLC.

[2] On September 13, 2019, Charles Ryan stepped down as ADC Director. Joseph Profiri is the Interim Director.

[3] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response. (Doc. 148.)

Recommendation, recommending that the Court deny Plaintiff's Motion for Extension of Time (Doc. 154).

The Court will adopt the February 19, 2019 Report and Recommendation; deny Plaintiff's Motion for Extension of Time to Serve Shuman and Robertson; dismiss Shuman and Robertson; deny as moot Defendants' Motion to Strike; and grant Defendants' Motion for Summary Judgment.

**I.    Background**

In his original Complaint filed on January 20, 2015, Plaintiff named Corizon, Christine Peretra, Ryan, Lavoy, Hurowitz, Lesac, and Angela Townsend as Defendants. (Doc. 1.) On screening the Complaint, the Court determined that Plaintiff had stated a claim against Townsend and dismissed Corizon, Peretra, Ryan, Lavoy, Hurowitz, and Lesac. (Doc. 8.) On February 2, 2017, Magistrate Judge Willett issued a Report and Recommendation, recommending that the Court dismiss Townsend for failure to timely serve. (Doc. 26.) In a separate Order filed the same day, among other thigs, Magistrate Judge Willette granted Plaintiff leave to file an amended complaint. (Doc. 27.)

Plaintiff filed his amended complaint on February 10, 2017 (Doc. 29) and named Corizon, Peretra, Ryan, Lavoy, Hurowitz, Lesac, and Townsend, as well Fizer, Grafton, Robertson, Shuman, and Smith-Whitson as Defendants. On March 24, 2017, Magistrate Judge Willett issued a Report and Recommendation (Doc. 31), recommending that the Court dismiss Defendants Lavoy, Hurowitz, Lesac, Corizon, Peretra, Ryan, Robertson, Shuman, Fizer, Smith-Whitson, Grafton, and Johnson and further recommended that the Court dismiss Townsend for the reasons set forth in the February 2, 2017 Report and Recommendation. On September 1, 2017, the Court adopted the February 2, 2017 Report and Recommendation and dismissed Townsend for failure to serve. (Doc. 33.)

On January 11, 2018, the Court adopted the March 24, 2017 Report and Recommendation in part. (Doc. 36.) The Court dismissed Lavoy, Hurowitz, Lesac, Peretra, Ryan, Robertson, Shuman, Fizer, Smith-Whitson, Grafton, and Johnson but granted Plaintiff leave to file a motion for leave to file a second amended complaint that

addressed the deficiencies identified in that Order and the Court's previous Orders. (*Id.*) The Court further ordered Corizon to answer to answer the First Amended Complaint. (*Id.*)

On January 19, 2018, Plaintiff lodged a proposed second amended complaint (Doc. 37), which the Court struck on March 30, 2018. (Doc. 39.) The Court granted Plaintiff additional time to file a motion for leave to file a second amended complaint that complied with the Local Rules of Civil Procedure and the Court's prior Orders. (*Id.*) On April 5, 2018, Corizon answered Plaintiff's First Amended Complaint. (Doc. 40.) On April 9, 2018, Plaintiff filed a Motion to Amend and lodged a proposed Second Amended Complaint. (Docs. 42 and 43.) On April 30, 2018, Magistrate Judge Willett granted the Motion to Amend and directed the Clerk of Court to file the lodged Second Amended Complaint. (Doc. 47).

In his Second Amended Complaint (Doc. 48), Plaintiff alleges that he suffers from neuropathy and chronic pain in his hands and feet, chronic pain due to degenerative disc disease in his back, and chronic pain from compressed vertebrae in his neck. (*Id.* at 4.)[4] Plaintiff alleges that Defendant Corizon denied and delayed treatment that had been prescribed by a doctor; Defendant Ryan was deliberately indifferent to Plaintiff's serious medical needs when Ryan denied Plaintiff's Inmate Grievance Appeal; Defendants Lavoy, Hurowitz, and Lesac delayed and denied treatment prescribed by a specialist and prescribed medications they knew Corizon would not approve; Defendants Grafton and Johnson were aware that Plaintiff's pain medications were not helping but they refused to prescribe different medication; Defendants Shuman, Fizer, and Smith-Whitson had a delegated duty to ensure prisoners received adequate care from Corizon but have refused to ensure this is done. (*Id.* at 14-15.) Plaintiff further alleges that Defendants Ryan, Shuman, Fizer, and Corizon knew Grafton and Johnson were denying treatment but refused to take corrective actions; Defendants Fizer and Smith-Whitson have a duty to ensure that prisoners receive

---

[4] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

treatment for their serious medical needs, but they refused to perform their duties according to ADC and Corizon's "custom and tradition" of denying and delaying treatment. (*Id.* at 19-20.)

On screening the Second Amended Complaint (Doc. 48), the Court determined that Plaintiff had stated an Eighth Amendment deliberate indifference claim against Defendants Corizon, Lavoy, Hurowitz, Lesac, Ryan, Grafton, Johnson, Robertson, Shuman, Fizer, and Smith-Whitson and ordered them to address the claim.[5] (Doc. 50.)

On January 24, 2019, Plaintiff filed a Motion to Enlarge Time to Serve Shuman and Robertson. (Doc. 142.) On February 15, 2019, Magistrate Judge Willett issued a Report and Recommendation, recommending that the Court deny Plaintiff's "Motion to Enlarge Time to Serve" and dismiss Defendants Shuman and Robertson. (Doc. 154.)

On September 19, 2019, Plaintiff filed a Response to Defendants' Motion for Summary Judgment (Doc. 167) and a "Request [that] this Court Take Notice" (Doc. 168). On September 20, 2019, Defendants filed a Motion to Strike (Doc. 170) Plaintiff's Response.

**II.    Motion to Enlarge Time to Serve**

In her Report and Recommendation recommending that the Court deny Plaintiff's Motion to Enlarge Time to Serve, Magistrate Judge Willett determined that although the United States Marshal's Service was unable to serve Robertson and Shuman with the address Plaintiff had provided, Plaintiff took no action to obtain alternative service addresses. (Doc. 154 at 3.) Thus, Magistrate Judge Willett concluded that Plaintiff had not shown good cause to grant a further extension of the service deadline. (*Id.*)

The Court agrees with Magistrate Judge Willett's conclusions. Therefore, the Court will adopt the Report and Recommendation, deny Plaintiff's Motion to Enlarge Time to Serve, and dismiss Defendants Robertson and Shuman for failure to serve.

….

---

[5] On August 16, 2019, the Court dismissed Defendants Peretra and Townsend for failure to serve. (Doc. 166.)

## III. Legal Standards

### A. Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### B. Eighth Amendment

To support a medical care claim under the Eighth Amendment, a prisoner must

demonstrate "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two prongs to the deliberate-indifference analysis: an objective standard and a subjective standard. First, a prisoner must show a "serious medical need." *Jett*, 439 F.3d at 1096 (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted).

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted); *see also Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). Deliberate indifference may also be shown where prison officials fail to respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096. "In deciding whether there has been deliberate indifference to an inmate's serious medical needs, [courts] need not defer to the judgment of prison doctors or administrators.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989)).

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corrs.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a

plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Even if deliberate indifference is shown, to support an Eighth Amendment claim, the prisoner must demonstrate harm caused by the indifference. *Jett*, 439 F.3d at 1096; *see Hunt*, 865 F.2d at 200 (delay in providing medical treatment does not constitute Eighth Amendment violation unless delay was harmful).

## IV. Facts[6]

Sometime before July 11, 2013, Plaintiff was prescribed gabapentin for pain.[7] (Doc. 147-1 at 2.) On July 17, 2013, a provider renewed Plaintiff's prescription for gabapentin. (*Id.*) In late September 2013, Plaintiff was also prescribed baclofen for back pain. (*Id.* at 4.) On December 12, 2013, Defendant Lesac saw Plaintiff at an offsite clinic. (*Id.* at 6.) Lesac requested that Plaintiff be evaluated for physical therapy for his complaints of chronic pain and back spasms. (*Id.*) On December 21, 2013, Plaintiff submitted a Health Needs Request (HNR) requesting gabapentin, which he stated he had not received although

---

[6] The facts are primarily taken from Plaintiff's medical records. Because Plaintiff did not file a proper response to Defendant's Motion, a controverting statement of facts, or separate statement of facts, the Court will construe Plaintiff's verified Second Amended Complaint as an affidavit in opposition to the summary judgment motion to the extent that statements therein are based on Plaintiff's personal knowledge. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (allegations in a pro se plaintiff's verified pleadings must be considered as evidence in opposition to summary judgment); *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (verified complaint may be used as an affidavit opposing summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence). However, to the extent Plaintiff failed to controvert Defendant's facts in his Second Amended Complaint, the Court will assume those facts are uncontroverted for the purposes of this Order. *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (if a summary judgment motion is unopposed, Rule 56 "authorizes the court to consider a fact as undisputed").

[7] In an April 20, 2014 Health Needs Request, Plaintiff stated a neurologist and a pain management doctor prescribed gabapentin for his neuropathy seven years before he entered prison. (Doc. 147-1 at 16.)

the prescription had been requested and reordered "long before" the prescription had expired.[8] (*Id.* at 9.)

On January 29, 2014, Defendant Hurowitz requested a consultation for physical therapy for Plaintiff's back and neck pain, which was approved. (*Id.* at 11.) On March 19, 2014, Plaintiff submitted an HNR stating that his gabapentin had just been approved the week before, but he did not have any left. (*Id.* at 14.) On March 20, 2014, Angela Townsend responded to the HNR and stated gabapentin was not approved for Plaintiff and she would place Plaintiff on the provider line to discuss an alternative treatment. (*Id.*)

On April 20, 2014, Plaintiff submitted an HNR stating that his gabapentin was not reordered, and he had not seen a doctor since then to discuss why it was not approved. (*Id.* at 16.) On April 21, 2014, Angela Townsend responded to the HNR and stated that Plaintiff was on the provider waiting list. (*Id.*) On April 30, 2014, baclofen and nortriptyline, a nerve pain medication and antidepressant, were ordered.[9] (*Id.* at 19.)

On May 20, 2014, Plaintiff submitted an Inmate Informal Complaint Resolution, asserting he was being denied medical treatment for financial reasons and that Defendant Lavoy had refused to renew Plaintiff's gabapentin and had instead substituted it with nortriptyline. (Doc. 48 at 9.) On May 23, 2014, Angela Townsend responded to Plaintiff's Inmate Informal Complaint Resolution. (*Id.*) Townsend stated that gabapentin was a non-formulary medication that was not being reordered by Corizon or "Pharmacorr." (*Id.*) On May 29, 2014, Correctional Officer (CO) III Scott "returned" another response from Townsend that stated, "The changes that have been made to your treatment plan have been deemed medically appropriate." (*Id.* at 9-10.)

---

[8] Gabapentin is an anticonvulsant medication used to prevent seizures and relieve pain for certain conditions. Mayo Clinic, *Gabapentin (Oral Route)*, available at https://www.mayoclinic.org/drugs-supplements/gabapentin-oral-route/description/drg-20064011 (last visited Sept. 27, 2019).

[9] Baclofen is a muscle relaxant. Mayo Clinic, *Baclofen (Oral Route)*, available at https://www.mayoclinic.org/drugs-supplements/baclofen-oral-route/description/drg-20067995 (last visited Sept. 27, 2019).

On May 30, 2014, Plaintiff submitted an Inmate Grievance concerning the prescription of an anti-depressant (nortriptyline) as a replacement for gabapentin, which had been prescribed by a neurologist. (*Id.* at 10.) On June 6, 2014, Christine Peretra responded to Plaintiff's Inmate Grievance, stating, "You were placed on baclofen and Pamelor [nortriptyline] after consulting with your provider, these medications are appropriate to treat your diagnosis." (*Id.*) On June 18, 2014, Plaintiff submitted an Inmate Grievance Appeal to Defendant Ryan. (*Id.*) Plaintiff wrote in the Inmate Grievance Appeal that gabapentin had been replaced by Pamelor only for his neuropathy and that he received baclofen for his degenerative disc and spinal condition, not for neuropathy. (*Id.*) Plaintiff also asserted that Pamelor had caused side effects, including hypertension, insomnia, dizziness, and drowsiness that affected his daily activities. (*Id.*)

On July 3, 2014, Plaintiff submitted an "emergency" HNR, asking to see a doctor and to be evaluated by a neurologist and stating that he had not started having back pain and muscle spasms until "they" changed his medications.[10] (*Id.*) On July 17, 2014, Plaintiff submitted another "complaint" concerning pain management because he was not receiving prescribed medication in a timely manner. (Doc. 48 at 11.) On July 22, 2014, Plaintiff submitted an HNR concerning this delay. (*Id.*)

On July 25, 2014, Defendant Ryan responded to Plaintiff's Inmate Grievance Appeal, stating "medication issues were discussed including those for neuropathy, however, you did not mention any side effects to your medications. We found no evidence to substantiate your allegations; therefore, your appeal is denied." (Doc. 48 at 11.) Between August 1, 2014 and August 7, 2014, Plaintiff submitted HNRs complaining of pain and numbness in his left arm, stating his medications were not helping, and requesting his nortriptyline. (Doc. 147-1 at 32-45.)

On September 18, 2014, Plaintiff saw Defendant Hurowitz. (*Id.* at 47.) Plaintiff had had an "echo" the day before and complained of neck pain with neuropathy and spinal

---

[10] Plaintiff apparently had an episode of angina with difficulty breathing. (Doc. 147-1 at 30, 38.) The same day, Defendant Lesac entered a request for an offsite consultation for a cardiac stress test for Plaintiff.

stenosis. (*Id.*) Plaintiff wanted to stop the nortriptyline but continue the baclofen. (*Id.*) Hurowitz ordered tests, including a cervical x-ray. (*Id.* at 50.) The cervical x-ray showed satisfactory alignment with degenerative joint disease and disc space narrowing in the lower cervical spine. (*Id.* at 53.) On September 25, 2014, Plaintiff submitted an HNR stating that nortriptyline gave him no relief from pain. (Doc. 48 at 11.)

Between October 1, 2014 and November 17, 2015, Plaintiff saw providers regarding his complaints of neck pain; submitted HNRs complaining of back pain and "unbearable" pain, burning, and a "pins and needles" sensation in his limbs; stating that gabapentin and baclofen were not working; and requesting increases in the dosages of his medications. (Doc. 147-1 at 63-112.) Plaintiff also underwent a CT scan of his cervical spine and reviewed the results with a provider. (*Id.* at 90.) Plaintiff's prescriptions for gabapentin and baclofen ultimately were not renewed, in favor of an Alternative Treatment Plan, which included treatment with Tegretol and alpha lipoic acid[11]. (*Id.* at 107-115.) Plaintiff reported that the alternative medications were not working and continued to request gabapentin and spinal injections. (Doc. 147-2 at 2-13.) On January 12, 2016, Plaintiff received a cervical transforaminal epidural steroid injection at an offsite clinic. (*Id.* at 15.) The pain specialist recommended that Plaintiff's prescription for Tylenol 3 be increased to three times per day and that Plaintiff start on gabapentin. (*Id.* at 19.) The pain specialist's recommendations were noted in a provider review on January 14, 2016, and gabapentin was ordered. (*Id.* at 21.)

On January 25 and 27, 2016, Plaintiff submitted HNRs stating that his Tylenol 3 had been discontinued and he was not receiving anything for his degenerative disc disease pain and requesting a follow-up appointment for pain management. (*Id.* at 27, 29.) On February 2, 2016, Plaintiff was prescribed indomethacin, and it was noted that Plaintiff

---

[11] Tegretol (Carbamazepine) is an anticonvulsant used to control seizures, pain, and bipolar disorder. Mayo Clinic, *Carbamazepine*, available at https://www.mayoclinic.org/drugs-supplements/carbamazepine-oral-route/description/drg-20062739 (last visited Sept. 27, 2019).

needed to be scheduled for a second steroid injection in his cervical spine.[12] (*Id.* at 34-35.) On February 8, 2016, Plaintiff saw Defendant Johnson for chronic care for asthma, hypertension, chronic hepatitis C (HCV), and cardiac issues. (*Id.* at 37.) However, it does not appear that Plaintiff complained of continuing or worsening pain. (*See id.*) Plaintiff subsequently submitted HNRs requesting that the gabapentin and indomethacin be increased because they were not working at the lower dosages. (*Id.* at 46, 48.) Plaintiff further stated that he had seen a pain management provider, who had prescribed tramadol, and asked why he had not received the tramadol.[13] (*Id.* at 46, 48.) A provider informed Plaintiff that prescriptions written by offsite providers were "discretionary" to the onsite provider and those prescriptions did not mean the prison would necessarily order the medication. (*Id.* at 48.)

On March 8, 2016, Plaintiff had a second cervical injection. (*Id.* at 58.) On March 16, 2016, Defendant Johnson renewed Plaintiff's prescription for alpha lipoic acid, which was prescribed for chronic pain, when the "system" prompted Johnson to refill the prescription. (Doc. 147-3 at 121). Johnson reviewed Plaintiff's medical records and determined that a refill was appropriate, but he did not evaluate Plaintiff. (*Id.*) On March 18, 2016, Plaintiff saw Defendant Grafton for follow-up care. (Doc. 147-2 at 58.) Plaintiff reported that he was "unsure" whether he felt a difference with the cervical injections and described his neck pain as "a lot of pressure" at the base of his head. (*Id.*) Plaintiff requested a third cervical injection and an increase in his pain medications. (*Id.* at 58, 62.) Grafton ordered tramadol and requested an offsite consultation at a pain clinic. (*Id.* at 58, 61.) On May 4, 2016, Plaintiff received a third cervical injection. (*Id.* at 66.) On May 18, 2019, Plaintiff saw a provider and complained of pain in his lower back to the right of his

---

[12] Indomethacin is a nonsteroidal anti-inflammatory drug used to treat mild to moderate acute pain and to relieve symptoms of arthritis and gout. Mayo Clinic, *Indomethacin (Oral Route)*, available at https://www.mayoclinic.org/drugs-supplements/indomethacin-oral-route/description/drg-20069700 (last visited Sept. 27, 2019).

[13] Tramadol is an opioid analgesic used to relieve moderate to moderately severe pain. Mayo Clinic, *Tramadol*, available at https://www.mayoclinic.org/drugs-supplements/tramadol-oral-route/description/drg-20068050 (last visited Sept. 27, 2019).

- 11 -

spine, a hard protrusion, and pain that radiated from that point down his right leg. (*Id.* at 73.)

On May 23, 2016, Plaintiff saw Defendant Grafton for follow-up care. (*Id.* at 79.) Plaintiff complained of pain with right lower back spasms. (*Id.*) He reported that he could not tell a difference in his pain after the cervical injections and stated that his neck still felt stiff. (*Id.*) Plaintiff also asked why the tramadol had been discontinued. (*Id.*) Grafton told Plaintiff tramadol was only for temporary use and that he had stated in an HNR that it was not effective; Plaintiff requested that the tramadol be reordered and increased. (*Id.*) Grafton ordered lumbar x-rays, increased the indomethacin, and ordered a visit on the provider line in four to six weeks to review the x-rays and evaluate the effectiveness of the indomethacin increase. (*Id.* at 84.) On June 2, 2016, x-rays of Plaintiff's back were taken. (*Id.* at 85.) The x-rays showed minor degenerative change but were otherwise normal. (*Id.* at 86.)

On June 28, 2016, Plaintiff saw Defendant Grafton for follow-up care. (*Id.* at 88.) Plaintiff complained of back and cervical pain and stated the indomethacin was not working. (*Id.*) Plaintiff asked to be taken off indomethacin and requested baclofen and gabapentin. (*Id.*) Grafton examined Plaintiff and noted that during the physical examination, Plaintiff was able to sit on the examination table, ambulate, and complete the examination without any objective manifestations of pain. (*Id.*) Grafton noted that Plaintiff had requested pain management for his degenerative disc disease, but it was not appropriate at that time, given the findings of her physical examination. (*Id.* at 92.) Grafton requested an offsite consultation for physical therapy. (*Id.* at 94-95.) On July 26, 2016, Plaintiff saw a provider after he had been discharged from the infirmary. (*Id.* at 97.) Plaintiff stated that he had been sent to a pain clinic for treatment and received epidurals, gabapentin, Percocet, and physical therapy twice weekly and requested the same treatment. (*Id.*)

On August 2, 2016, Plaintiff saw Defendant Grafton for chronic care for asthma, hypertension, and HCV, but it does not appear that Plaintiff complained of continuing or

worsening pain. (*Id.* at 110.) On August 4, 2016, Plaintiff had an offsite consultation for physical therapy. (*Id.* at 119.) Plaintiff reported shooting pain 25 to 100% of the time at a level of 8 to 10.[14] (*Id.*) On April 21, 2017, Plaintiff saw Defendant Grafton for follow-up care. (*Id.* at 10.) Grafton ordered a CT scan and ordered duloxetine and a back brace for Plaintiff's chronic back pain. (*Id.* at 15.) Grafton noted that gabapentin had not been approved. (*Id.*)

## V. Discussion

### A. Defendants' Motion to Strike Plaintiff's Objection

Defendants move to strike Plaintiff's Objection to their Motion for Summary Judgment as untimely. Because the Court concludes Defendants are entitled to summary judgment regardless of whether the Court considers Plaintiff's Objection, the Court will deny the Motion to Strike as moot.

### B. Statute of Limitations

In their Motion for Summary Judgment, Defendants first contend that Plaintiff's claims are barred by the statute of limitations. (Doc. 146 at 21.) They assert that for purposes of the statute of limitations, Plaintiff's date of injury is February 28, 2012, when his requests for pain medication were first denied and/or delayed. (*Id.*)

Liberally construing the Second Amended Complaint, Plaintiff alleges a continuing violation of his Eighth Amendment rights with respect to medical care from February 2012 to April 2018. *See Gutowsky v. Cnty. of Placer*, 108 F.3d 256, 259 (9th Cir. 1997); *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir. 1982); *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) ("The [continuing violation] doctrine applies where there is 'no single incident' that can 'fairly or realistically be identified as the cause of significant harm.'") (internal citation omitted); *Nesovic v. United States*, 71 F.3d 776, 778 (9th Cir. 1995) (continuing violation doctrine applies to "repeated instances or continuing acts of the same nature, as for instance, repeated acts of sexual harassment or repeated

---

[14] Between August 4, 2016 and April 15, 2017, Plaintiff saw Defendant Grafton approximately six times regarding hematuria, kidney stones and associated pain, a mass in his right lung, and a mass in his liver. (*Id.* at 134-171; Doc. 147-3 at 3-9).

- 13 -

discriminatory employment practices"). Under the continuing violation doctrine, the limitation period does not begin to run until the wrongful conduct ends. *Flowers*, 310 F.3d at 1126.

To establish a continuing violation, a plaintiff must show that unlawful acts that took place outside the limitations period are "related and similar to" unlawful acts that occurred within the limitations period such that all acts are actionable as part of a continuing violation. *O'Loghlin v. Cnty. of Orange*, 229 F.3d 871, 875 (9th Cir. 2000).

> "[There are] two methods by which a plaintiff may establish a continuing violation. First, the plaintiff may show a serial violation by pointing to a series of related acts against one individual, of which at least one falls within the relevant period of limitations . . . . Second, a plaintiff may show a systematic policy or practice of discrimination that operated, in part, within the limitations period—a systemic violation."

*Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 822 (9th Cir. 2001).

The Court finds that Plaintiff's claims fall within the first of the two methods for establishing a continuing violation as set forth in *Douglas*. Liberally construing the Second Amended Complaint, Plaintiff alleges that from 2012 to 2018, Defendants continuously denied him adequate treatment for his pain in violation of the Eighth Amendment. Thus, the Court concludes that none of Plaintiff's claims are barred by the statute of limitations.

### C. Corizon's Liability Before March 4, 2013

Defendants also contend that Corizon is not liable for Plaintiff's medical care before it became ADC's medical provider on March 4, 2013. (Doc. 146 at 21.) The Court finds that Corizon's liability extends only to Plaintiff's treatment after March 4, 2013.

### D. Eighth Amendment

#### 1. Serious Medical Need

Examples of indications that a prisoner has a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*,

974 F.2d at 1059–60. Defendants do not dispute that Plaintiff's medical needs were serious, and the evidence in the record establishes that Plaintiff suffered from and was consistently evaluated and treated for chronic pain. The Court finds that Plaintiff's conditions qualify as serious medical needs. The Court's analysis therefore turns on whether Defendants' conduct amounted to deliberate indifference.

### 2. Deliberate Indifference

With respect to the second prong, a plaintiff must first show that the defendant was "subjectively aware of the serious medical need[.]" *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017-18 (9th Cir. 2010) (quotation and citation omitted). Then, the plaintiff must show: (1) a purposeful act or failure to respond to a prisoner's pain or possible medical need; and (2) harm caused by the indifference. *Jett*, 439 F.3d at 1096. A plaintiff may meet the harm requirement by demonstrating that the defendant's actions or policies expose the prisoner to a "substantial risk for serious harm." *Parsons v. Ryan*, 754 F.3d 657, 677 (9th Cir. 2014). A plaintiff does not need to "await a tragic event" before seeking a remedy. *Farmer*, 511 U.S. at 828.

#### a) Defendants Grafton and Johnson

Defendant Johnson had one chronic care encounter with Plaintiff, on February 8, 2016, during which they did not discuss Plaintiff's complaints of back pain or neuropathy. On March 16, 2016, Johnson renewed Plaintiff's prescription for alpha lipoic acid, which was prescribed for chronic pain, but he did not evaluate Plaintiff. Rather, Johnson only reviewed Plaintiff's chart when prompted by the system to renew Plaintiff's prescription. Plaintiff alleges in the Second Amended Complaint that Johnson was aware of Plaintiff's continuing complaints of pain through the HNRs Plaintiff filed. (Doc. 48 at 20.) Defendants assert that HNRs do not come to Johnson's attention unless the prisoner he is evaluating has requested to see a provider through an HNR. (Doc. 146 at 28.)

The Court finds that the evidence in the record establishes that Johnson did not have the requisite personal involvement or knowledge of Plaintiff's chronic pain to support a conclusion that Johnson was deliberately indifferent to Plaintiff's serious medical needs.

With respect to Defendant Grafton, Plaintiff had multiple visits with Grafton, during which Plaintiff complained of pain. Defendants contend that Grafton reasonably opted to treat Plaintiff's pain conservatively, "in accord with standard practice." (Doc. 146 at 26.) Defendants assert that Grafton consistently responded to Plaintiff's complaints of pain by performing a "full" assessment, prescribing appropriate medications as clinically indicated, ordered follow-up with pain management, discussed alternative treatments, ordered lab tests and x-rays, and "continuously explained to Plaintiff the rational behind her medical decisions." (*Id.*)

The evidence in the record demonstrates that Grafton did not disregard Plaintiff's serious medical needs. Rather, Grafton prescribed and increased the dosages of multiple medications, including tramadol, a narcotic, indomethacin, and Cymbalta and ordered testing and imaging to evaluate Plaintiff's objective condition. Furthermore, Grafton ensured that Plaintiff received all the epidural steroid injections that had been recommended by the pain specialist. This evidence indicates that Grafton did not ignore Plaintiff's complaints of pain, and although his pain was never eliminated, it does not necessarily follow that Grafton's treatment decisions were deliberately indifferent. And, while Plaintiff may disagree, he provides no evidence that this plan of care was "medically unacceptable under the circumstances." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Accordingly, the Court will grant summary judgment to Defendants Grafton and Johnson and dismiss them from this action.

### b) Defendants Lavoy, Hurowitz, and Lesac

Plaintiff alleges in the Second Amended Complaint that Defendants Lavoy, Hurowitz, and Lesac "failed to prescribe medications that Corizon would authorize," and as a result, Plaintiff did not have medication that relieved his pain. (Doc. 48 at 22.)

With respect to Defendant Lavoy, there is no evidence in the record that Defendant Lavoy was in any way personally involved in Plaintiff's medical care or otherwise aware of Plaintiff's serious medical needs. The Court thus finds there is no genuine dispute of

1 material fact concerning whether Lavoy was personally involved in Plaintiff's treatment or
2 deliberately indifferent to his serious medical needs.

3 Defendant Hurowitz requested a consultation for physical therapy for Plaintiff's
4 back and neck pain and ordered a cervical x-ray. It does not appear from the evidence in
5 the record that Hurowitz ever prescribed medication for Plaintiff. To the extent that
6 Plaintiff alleges that Hurowitz should have prescribed medication, there is no evidence in
7 the record that supports a conclusion that Hurowitz's failure to do so amounted to
8 deliberate indifference to Plaintiff's serious medical needs. Based on this record, the Court
9 finds there is no genuine dispute of material fact concerning whether Hurowitz was
10 deliberately indifferent to Plaintiff's serious medical needs.

11 Defendant Lesac requested consultations for physical therapy. There is no evidence
12 in the record that Lesac prescribed any medication for Plaintiff, and there is no evidence
13 that any failure to prescribe medication amounted to deliberate indifference to Plaintiff's
14 serious medical needs. Based on this record, the Court finds there is no genuine dispute of
15 material fact concerning whether Lesac was deliberately indifferent to Plaintiff's serious
16 medical needs.

17 Accordingly, the Court will grant summary judgment to Defendants Lavoy,
18 Hurowitz, and Lesac and will dismiss them from this action.

### c) **Defendants Fizer and Smith-Whitson**

20 Plaintiff alleges in the Second Amended Complaint that Defendants Fizer and
21 Smith-Whitson were aware of Plaintiff's serious medical needs through his complaints and
22 that they have a delegated duty to ensure prisoners receive effective care from Corizon but
23 have refused to do so. (Doc. 48 at 23.) There is no evidence in the record that Defendants
24 Fizer and Smith-Whitson were in any way involved in Plaintiff's medical treatment or
25 otherwise aware of his serious medical needs. Neither Fizer nor Smith-Whitson is a
26 medical provider; rather, Fizer was a Warden, and Smith-Whitson was a Deputy Warden.
27 (Doc. 146 at 30.) There is no evidence in the record that Fizer or Smith-Whitson ever
28 spoke to Plaintiff about his complaints of pain. Even if it is true, as Plaintiff alleges, that

1  Fizer and Smith-Whitson have a duty to ensure prisoners receive adequate care, there is no
2  evidence in the record that Fizer or Smith-Whitson failed to perform that duty.  The Court
3  finds there is no genuine dispute of material fact concerning whether Fizer and Smith-
4  Whitson were deliberately indifferent to Plaintiff's serious medical needs.  Accordingly,
5  the Court will grant summary judgment to Fizer and Smith-Whitson and dismiss them from
6  this action.

### d) Defendant Ryan

#### (1) Knowledge of Serious Medical Need

A defendant's knowledge of a serious medical need or substantial risk to health "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence," and a defendant may be found to have known of a substantial risk if the risk was obvious. *Farmer*, 511 U.S. at 842.  Plaintiff's allegations in the Second Amended Complaint that Defendant Ryan was aware that Corizon was not providing prisoners with medication to help their conditions and refused to direct Corizon to provide those medications are insufficient to support a conclusion that Ryan was aware of *Plaintiff's* serious medical needs.  Rather, Plaintiff's only allegations concerning Ryan's involvement in Plaintiff's treatment is that Ryan denied Plaintiff's Inmate Grievance Appeal.  Thus, the Court must consider whether, in denying Plaintiff's Inmate Grievance Appeal, Ryan was deliberately indifferent to Plaintiff's serious medical needs.

#### (2) Ryan's Response

There is no evidence that Defendant Ryan is a physician or has any medical training.  Ryan denied Plaintiff's Inmate Grievance Appeal, in which Plaintiff complained that he was not receiving gabapentin and that Pamelor was causing side effects.  Ryan noted in the response to Plaintiff's Inmate Grievance Appeal that Plaintiff had discussed—presumably with a provider—medication issues, including medications for neuropathy, but Plaintiff had not complained of side effects.  Ryan therefore determined that Plaintiff's complaints of side effects were unsubstantiated.  The Court finds that in denying Plaintiff's Inmate Grievance Appeal, Ryan did not disregard Plaintiff's serious medical needs.  Other than

1  Plaintiff's Inmate Grievance Appeal, there is no evidence in the record that Ryan was
2  personally involved in Plaintiff's medical care or that Ryan had knowledge of a substantial
3  risk of harm to Plaintiff's health. Accordingly, the Court finds there is no genuine dispute
4  of material fact concerning whether Ryan was deliberately indifferent to Plaintiff's serious
5  medical needs and the Court will grant summary judgment to Ryan and dismiss him from
6  this action.

### e) Defendant Corizon

To prevail on a claim against Corizon as a private entity serving a traditional public function, Plaintiff must meet the test articulated in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690-94 (1978). *See also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities acting under color of state law). Accordingly, Plaintiff must show that an official policy or custom caused the constitutional violation. *Monell*, 436 U.S. at 694. To make this showing, he must demonstrate that (1) he was deprived of a constitutional right; (2) Corizon had a policy or custom; (3) the policy or custom amounted to deliberate indifference to Plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). Further, if the policy or custom in question is an unwritten one, the plaintiff must show that it is so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)).

The Court finds that Corizon consistently provided appropriate evaluation, testing, and treatment for Plaintiff's complaints of chronic pain, including consultations with a pain specialist and specialist treatment with cervical injections. Although Plaintiff did not always receive the specific pain medication he preferred at the specific dosage he preferred, that does not necessarily equate to deliberate indifference to his serious medical needs. Rather, the evidence in the record demonstrates that Plaintiff merely disagreed with the course of treatment he received. However, "a difference of opinion between a physician

and the prisoner . . . concerning what medical care is appropriate does not amount to deliberate indifference," and there is no evidence in the record that the treatment Plaintiff received was "medically unacceptable." *See Colwell*, 763 F.3d at 1068. Thus, the Court finds that Plaintiff's constitutional rights were not violated as a result of the care he received, and the Court need not consider whether Corizon had a policy or custom that amounted to deliberate indifference to Plaintiff's rights. The Court will therefore grant summary judgment to Defendant Corizon and dismiss Corizon from this action.

There being no remaining Defendants, the Court will grant Defendants' Motion for Summary Judgment.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Plaintiff's Motion to Enlarge Time to Serve (Doc. 142), Defendants' Motion for Summary Judgment (Doc. 146), and Defendants' Motion to Strike (Doc. 170).

(2) The February 15, 2019 Report and Recommendation (Doc. 154) is **adopted**. Plaintiff's Motion to Enlarge Time to Serve (Doc. 142) Defendants Robertson and Shuman is **denied**. Defendants Robertson and Shuman are **dismissed** for failure to serve.

(3) Defendants' Motion for Summary Judgment (Doc. 146) is **granted**, and the action is terminated with prejudice. The Clerk of Court must enter judgment accordingly.

(4) Defendants' Motion to Strike (Doc. 170) is **denied as moot**.

Dated this 30th day of September, 2019.

Honorable Roslyn O. Silver
Senior United States District Judge